Ronald L. AARON, et al., Plaintiffs–
Appellees/Cross–Appellants,

v.

The CITY OF WICHITA, KANSAS,
Defendant–Appellant/, Cross–
Appellee.

Nos. 93–3245, 93–3262.

United States Court of Appeals,
Tenth Circuit.

May 9, 1995.

Charles W. Harris, Curfman, Harris, Rose, Weltz & Smith, Wichita, KS (Ronald D. Innes, Wichita, KS, with him on the brief), for plaintiffs–appellees/cross–appellants.

Richard D. Ewy, Foulston & Siefkin, Wichita, KS (Robert L. Howard and Timothy B. Mustaine, Foulston & Siefkin, Wichita, KS, with him on the brief), for defendant–appellant/cross–appellee.

Before EBEL, MCKAY, and REAVLEY*, Circuit Judges.

REAVLEY, Circuit Judge.

City firefighters sued the City of Wichita (the "City") for wages due under the Fair Labor Standards Act ("FLSA"). The district

---

* The Honorable Thomas M. Reavley, United States Court of Appeals, Fifth Circuit, sitting by desig-

nation.

court concluded that the City had violated the FLSA by improperly calculating the "regular rate" of pay used to compute overtime and by exempting certain employees from FLSA overtime requirements and granted summary judgment for the firefighters. We reverse. We dismiss the firefighters' claims that the City calculated an improper FLSA "regular rate," and we remand the claims by the Fire Captains, Fire Division Chiefs, and Fire Battalion Chiefs that the City had improperly exempted them from FLSA overtime requirements for a "duties test" determination.

## BACKGROUND

The firefighters in this suit work shifts of 24 consecutive hours, followed by 48 consecutive unpaid hours off work. The firefighters are in "pay status" (at work or on paid leave, such as sick leave or vacation) 56 hours per week, on average, or 112 hours every two weeks. During the years in question in this case, the employment terms for the rank and file firefighters (as distinguished from the Captains and Chiefs) were specified in written Memoranda of Agreement ("MOAs") collectively bargained between the International Association of Fire Fighters ("IAFF") and the City. Two of the MOAs for the years relevant to this case contain pay schedules indicating both bi-weekly salaries and hourly rates and the MOA for one year indicates an hourly rate only. However, both parties concede that the appropriate regular rate should be based on the bi-weekly salaries agreed upon in the bargaining process. Both parties also agree that the rank and file firefighters were paid for every hour worked even though the regular rate was derived from a negotiated bi-weekly "salary." The only dispute is over how many hours the bi-weekly salary was intended to compensate.

The firefighters contend that the salaries in the MOA schedules divided by the average number of non-overtime hours worked by the firefighters equals the appropriate hourly rate. The City contends that these salaries should be divided by the average number of hours the firefighters are in "pay status" during a bi-weekly period (112). In the MOA schedules with both bi-weekly and

hourly rates, the bi-weekly salaries divided by the corresponding hourly rate equals 112, indicating that the hourly rates in these schedules were determined by dividing the MOA bi-weekly salaries by 112 hours. Therefore, the City's formula for the regular rate has support in the written MOAs signed by both parties.

During the MOA negotiations, the firefighters' representative objected to the City's formula for computing the hourly rate, arguing that 112 was not the correct divisor. Yet, the firefighters signed the agreements without insisting on a different designated hourly rate. It is undisputed that the firefighters were actually paid at the bi-weekly period for every non-overtime hour worked at the regular rate computed using the City's formula and for every overtime hour at one and one-half times the regular rate computed using this formula.

The firefighters' complaint alleged that the City had violated the FLSA because the City: 1) failed to pay them for sleep and meal-time hours; 2) improperly exempted Fire Captains, Battalion Chiefs and Division Chiefs from overtime requirements; and 3) disregarded controlling regular rate principles by designating an artificial hourly rate of pay derived by dividing plaintiffs' salaries by an overstated divisor. The firefighters moved for summary judgment on all three claims and asked for a finding of willfulness on the part of the City which would extend recovery from two to three years. The City, on the other hand, contended that, even if it did violate FLSA, its actions were based on an objectively reasonable good faith belief that it was complying with the FLSA, and it was therefore not obligated to pay liquidated damages under 29 U.S.C. § 216(b).

The district court disposed of the case by summary judgment. The first claim for unpaid hours was denied, but the court granted the firefighters summary judgment on the second and third claims after finding that the regular rate of pay was improperly calculated and that the Fire Captains, Battalion Chiefs, and Division Chiefs were not exempt from FLSA requirements. The court ruled for the City on the willfulness and good faith issues. The firefighters appeal the court's

judgment denying awards for willfulness and bad faith. The City appeals the judgment awarding the firefighters a substantial unpaid wages recovery. We reverse and render judgment for the City on the firefighters' regular rate claims, but we remand the claims by the Fire Captains, Fire Division Chiefs, and Fire Battalion Chiefs that they were improperly exempted from FLSA overtime requirements.

## DISCUSSION

i. *Determining the Regular Rate under the FLSA.*

■ The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed. *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199, 203, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432, *modified,* 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947); *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944). The regular rate is a rate per hour, but employers are not required to compensate employees on an hourly basis. 29 C.F.R. § 778.109 (1993). If an employee is employed on a salary basis, his regular hourly rate is computed by dividing the salary by the number of hours for which the salary is intended to compensate. 29 C.F.R. § 778.113 (1993).

The firefighters were paid based on the number of hours they worked, but the hourly rate was based on a designated "base salary" indicated in the MOAs. The dispute centers on the number of hours the designated salary was intended to cover. The firefighters claim that it was only intended to cover non-overtime hours. The City contends that it was intended to cover 112 hours, which includes some overtime hours. The MOAs support the City's contention because the hourly rates indicated in the MOAs are equivalent to the salaries indicated in the MOAs divided by 112.

■ The district court concluded as a matter of law that the City's calculation for the regular rate could not be correct, because overtime hours could not be used in calculating the regular rate. This interpretation is clearly inconsistent with FLSA regulations.

The regulations provide that a base salary used to calculate a regular rate can be intended to cover more than 40 hours in one week and the regulations illustrate how to deal with the calculation of the regular rate in such a case. 29 C.F.R. § 778.325 (1993). The example given in the regulations states:

> If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and the statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55. *Id.*

The City claims, and the MOAs indicate, that this was the type of arrangement agreed to by the City and the firefighters. The bi-weekly salaries found in the MOAs were intended to cover 112 hours of work for each pay period. Therefore, the regular rate consisted of the MOA-designated bi-weekly salary divided by 112. The MOA bi-weekly salary compensated the firefighters at that rate for up to 112 hours of work. If a firefighter worked a total of 112 hours, some of those hours would be considered overtime hours, and therefore, the firefighters would also receive one-half the regular rate for each of those hours. Any hours worked over 112 were all overtime hours and the firefighters would be entitled to one and one-half times the regular rate for those hours. This pay scheme is clearly consistent with the FLSA regulations.

The district court held that such a method of computing the regular rate was invalid as a matter of law because overtime hours cannot be used in computing the regular rate of pay. In coming to this conclusion, the district court relied on *149 Madison Ave. Corp.,* 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947). In that case, the Supreme Court stated that the regular rate is the rate actually paid for the "normal, non-overtime workweek." *Id.* at 204, 67 S.Ct. at 1181. In referring to the "normal, non-overtime workweek" the Court was not discussing how to compute the regular rate from a salary, but was stating that the object of that computation is to determine what rate was being paid

for the non-overtime workweek unaffected by any inflated rate paid for overtime work hours. The implication of the Supreme Court's statement is not, as the district court concluded, that overtime hours cannot be used when deriving the regular rate from a salary. Indeed, the Court also stated that,

A wage plan is not rendered invalid simply because instead of stating directly an hourly rate of pay in an amount consistent with the statutory requirements, the parties have seen fit to stipulate a weekly wage inclusive of regular and overtime compensation for a workweek in excess of 40 hours and have provided a formula whereby the appropriate hourly rate may be derived therefrom. *Id.*

If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours and not just the non-overtime hours because a failure to do so will result in a rate that is not representative of the rate actually paid for the "normal, non-overtime workweek." The Supreme Court has stated that if a salary includes a premium for overtime work, it must be deducted before dividing the salary by the number of hours worked so that the resulting rate is not inflated by the overtime premium. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948). The district court in this case apparently confused the concepts of overtime premiums and overtime hours.

In their appeal to this court, the firefighters apparently concede that the MOA salaries should be used to compute the regular rate. The firefighters also do not argue that overtime hours cannot be used in the divisor of the formula for determining the regular rate as a matter of law, as the district court held. The firefighters instead argue on appeal that the rate determined using 112 as the divisor is "fictitious" because 1) it includes "Kelly Days" which cannot be used to understate the hourly rate; and 2) it does not represent the parties' intent.

██ The firefighters argue that they have historically been given time off in order to reduce overtime. Because, they argue, these days off ("Kelly days") were meant to reduce overtime rather than provide compensated time off, they should not have been included in the divisor for purposes of calculating the regular rate. However, after reviewing the record, we believe that "Kelly days" were simply another form of paid vacation and, therefore, properly included in hours to be compensated by the regular bi-weekly salary.

██ In support of their contention that the MOA salary was not intended to cover 112 hours of work, the firefighters point to the fact that their representative objected to the City's formula during negotiations for one of the MOAs. They also point to the fact that during MOA negotiations, the firefighters' attorney sent a letter to the City stating that the firefighters acknowledged the City's formula for determining the regular rate, as evidenced in the particular MOA being negotiated at the time, but also stating that the "Union is not waiving its right to additional compensation should a court of competent jurisdiction later determine that [the City's formula] is in error." This statement does not change the fact that the firefighters signed the contract in question and both the City and the firefighters abided by its terms. In addition, on its face, the contract, including the City's formula for the regular rate, does not violate the FLSA, giving a court of competent jurisdiction no reason to determine that it is in error.

The Supreme Court has held, however, that when determining the number of hours a salary is intended to cover, the contract between the parties is not necessarily determinative. *149 Madison Ave.*, 331 U.S. at 204, 67 S.Ct. at 1181. The Court stated that the regular rate is an " 'actual fact,' and in testing the validity of a wage agreement under the Act the courts are required to look beyond that which the parties have purported to do." *Id.* (citing *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945)); *see also, Bay Ridge Operating Co.*, 334 U.S. at 464, 68 S.Ct. at 1195–96 (holding that the "words and practices under the contract are the determinative facts in finding the regular rate"). In *149 Madison Ave.*, the Court determined that the facts in that case

showed that, although the contract stated that the hourly rate should be derived through the use of a formula stated in the contract, the hourly rate actually paid was not consistent with that formula. 331 U.S. at 208, 67 S.Ct. at 1183.

The district court in this case found that the firefighters were compensated for every hour worked. The firefighters do not contend that the rate actually received by them is not the rate specified in the MOAs, nor do they contend that they did not receive one and one-half times that rate for every overtime hour worked. The firefighters merely argue that the rate specified in the MOAs, the rate actually received by them, was not a valid rate under the FLSA. The district court agreed because it erroneously concluded that, as a matter of law, overtime hours could not be used in calculating the regular rate. This interpretation of the FLSA is incorrect. The FLSA does not preclude the coverage of overtime hours in a salary used to compute the regular rate. If the parties intended a salary to cover overtime hours, the regular rate cannot be inflated by subtracting those hours from the number of hours divided into the salary. The contract in question, as well as the actual practices of the parties, clearly indicate that the base salaries in the MOAs were intended to cover a standard 56 hour work week or 112 hours per bi-weekly pay period. The regular rate so derived meets the minimum hourly wage requirements under the FLSA and all required overtime requirements were seemingly met by payment of time and one-half at that regular rate for all FLSA determined overtime hours. Therefore, the City's method of payment to the rank and file firefighters did not violate the FLSA.

## II. *Executive Exemption.*

The Fire Captains, Fire Division Chiefs and Fire Battalion Chiefs have brought claims based on the fact that they were paid some overtime, but were not paid the amount of overtime that an employee protected by the FLSA would have received, because the City considered them "executive employees" exempt from FLSA requirements. The Captains and Chiefs contend, and the district court held, that they are not "executive employees" as defined in the FLSA.

The FLSA exempts any employee employed in a bona fide executive, administrative, and professional capacity from the overtime requirements of 29 U.S.C. §§ 206 and 207. 29 U.S.C. § 213(a)(1) (Supp.1994). The employer has the burden of showing that its employees are exempt from the FLSA's overtime provisions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). Federal regulations provide two tests for determining whether an employee qualifies for the executive exemption. 29 C.F.R. § 541.1 (1994). Under the "short test," exempt status is given to any employee:

> who is compensated on a salary basis at a rate of not less than $250 per week . . . , and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein. . . .

29 C.F.R. § 541.1(f).

It is undisputed that the Fire Captains and Chiefs received a bi-weekly salary equalling more than $250 per week. The district court found, however, that these employees could not be considered paid "on a salary basis" because of a City policy allowing for deductions in accrued leave for absences of less than a day. Because the court determined that the employees were not salaried, it did not reach the issue of whether the employees fulfilled the "duty" requirements under the short test.

Exemptions to the FLSA are to be narrowly construed; the employer must show that the employee fits "plainly and unmistakenly within the exemption's terms"—under both the "salary" test and the "duties" test. *See Reich v. State of Wyoming,* 993 F.2d 739, 741 (10th Cir.1993). An employer must prove that the employee is exempt by "clear and affirmative" evidence. *Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984).

### A. Salary Test

Under both the short and long test for the executive exemption, the employer must

prove that the employees in question are paid on a salary basis rather than an hourly rate. 29 C.F.R. § 541.1(f); *see also Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir.1990). According to 29 C.F.R. § 541.118(a) (1994), an employee is compensated on a salary basis if "under his employment agreement he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

▮ The district court held that because the City had a policy requiring that absences of less than a day[1] be charged against accrued leave, the employees could not be considered salaried. Several circuits have held that policies penalizing an employee for absences of less than one day (at least when the penalty involved the possible loss of pay) indicate that employees subject to these policies are not salaried employees as defined by 29 C.F.R. § 541.118(a), and therefore, preclude exemption of these employees from FLSA requirements under 29 C.F.R. § 541.1. *Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C.Cir.1993); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 617 (2d Cir.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *Abshire*, 908 F.2d at 486. Other circuits have held that unless an employee's pay, as opposed to their compensatory leave, is actually docked, such a policy does not preclude exemption. *McDonnell v. City of Omaha*, 999 F.2d 293, 297 (8th Cir.1993); *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir.1991); *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991). We need not decide which of these two interpretations to adopt, because even the circuits requiring less than actual docking to preclude exemption, require an *express* policy that an employee's actual pay will be reduced in the event that accrued leave is exhausted. The record shows that none of the employees in question here ever had their pay docked under such a policy. Only accrued leave was affected by days missed. Indeed, the firefighters have pre-

sented no evidence that the City had an *express* policy of docking pay for time missed. Thus, under either line of cases above, the City's policy of docking paid leave does not preclude salary status as a matter of law.

▮ The district court also relied on the fact that the firefighters in question received compensation for overtime hours. The regulations provide however, that "additional compensation besides the salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b); *see also* 57 Fed.Reg. 37666, 37673 (indicating that overtime compensation falls within the meaning of the type of extra compensation allowed under 29 C.F.R. § 541.118(b)). The regulation uses commissions as an example of a type of additional compensation covered by the regulation, but there is nothing in the regulation which significantly distinguishes commissions (extra compensation resulting from superior productivity while working) from overtime (extra compensation for a greater number of hours worked).

The district court also pointed to the fact that the paystubs of the allegedly exempt employees indicated the number of hours covered by the pay check. Since overtime is not inherently inconsistent with one's status as a salaried employee, the fact that the firefighters' paystubs indicated the number of hours covered is also not inconsistent with salaried status. Such an accounting of hours is necessary to compute overtime compensation.

▮ The City claims, and the firefighters do not dispute, that the chiefs and captains were paid a predetermined amount constituting at least part of their compensation. The MOAs and the salary ordinances set a biweekly salary, and not an hourly rate, for these employees. Neither the fact that their accrued leave could be deducted for absences, nor the fact that they were paid overtime, nor the fact that their paychecks indicated the number of hours covered contradicts the conclusion that they regularly received a "predetermined amount constituting ... part of [their] compensation, which [was] not subject to reduction because of

---

1. We find no allegations of docking for absences of greater than one day, in which case a distinc-

tion is drawn between different types of absences. *See generally* 29 C.F.R. § 541.118(a).

variations in the quality or quantity of work performed." 29 C.F.R. § 541.118(a). We therefore hold that the fire captains, fire battalion chiefs, and fire division chiefs were paid on a salary basis.

### B. Duties Test

The short test in § 541.1 also requires that to fall under the executive exemption, the employees in question must: 1) have as their primary duty "the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; and 2) this duty must include "the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. § 541.1(f).

In *Department of Labor v. City of Sapulpa*, we held that, as a "rule of thumb," an employee's primary duty is executive if the employee spends more than 50% of his or her time performing management type functions. 30 F.3d 1285, 1287 (10th Cir.1994). The City contends that Chiefs and Captains spend in excess of 80% of their work hours managing the subdivisions of the fire department over which each position has been given supervisory power. The firefighters contend that the Chiefs' activities do not constitute management because they have little or no discretion or independent judgment; no authority to hire, fire, promote, demote, suspend personnel, authorize shift trades, authorize transfers, give pay raises, or reduce pay; no authority to make policy determinations or make spending decisions or modify equipment. The firefighters also assert that the Battalion and Division Chiefs spend much of their time doing work clerical in nature, and they must participate in fitness training and fight fires and respond to medical emergencies along with the rank and file firefighters. We conclude that a genuine issue of fact is also raised with respect to the "duties" test.

The district court must determine what percentage of the Chiefs' and Captions' time is spent on management tasks. In *Sapulpa*, we noted that the regulations indicate various activities that are considered to be management duties. *Id.* (citing 29 C.F.R. § 541.102(b)). If on remand the court determines that the Chiefs or Captains spend less than 50% of their time on management func-

tions, however, a four-factor analysis must be applied by the district court to determine whether the employees may nevertheless be considered supervisory. *Id.* These four factors include: 1) the relative importance of management as opposed to other duties; 2) the frequency with which the employee exercises discretionary powers; 3) the employee's relative freedom from supervision; and 4) the relationship between the alleged exempt employee's salary and wages paid to other employees for similar non-exempt work. *Id.*

The district court's judgment is REVERSED. We DISMISS the firefighters' claims that the City calculated an improper FLSA "regular rate," and we REMAND the claims by the Fire Captains, Fire Division Chiefs, and Fire Battalion Chiefs that they were improperly exempted from FLSA overtime requirements for further proceedings consistent with this opinion.

REVERSED AND REMANDED IN PART.