## UNITED STATES COURT OF APPEALS
### Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                    Elisabeth A. Shumaker
Clerk                                                                      Chief Deputy Clerk

October 8, 1996


**TO:**   All recipients of the captioned opinion

**RE:**   95-5162, Spradling v. City of Tulsa
          September 13, 1996


Please be advised of the following correction to the captioned decision:

A word was omitted on page 21, first line following the section 4 subheading.  It should read:

The City argues that, even if "it" has failed to satisfy the salary test . . . .

Please make the appropriate correction.

Very truly yours,

Patrick Fisher, Clerk


Susan Tidwell
Deputy Clerk

UNITED STATES COURT OF APPEALS

**Filed 9/13/96**             TENTH CIRCUIT

| | |
|---|---|
| B.N. SPRADLING, B.C. DOW, J.D. FELLINGER, L.M. LAMB, ROBERT McCLARY, PHILIP MORGANS, EDGAR LEON WILSON, F.L. COOK, D.R. GRANT, E.L. SIMPSON, THOMAS E. HOLLAND, ROBERT E. NANTZ, BILLY JOE GEIER, KEN LORTON, BILLY J. RICHARDSON,<br><br>     Plaintiffs - Appellees,<br><br>     v.<br><br>CITY OF TULSA, OKLAHOMA, a municipal corporation,<br><br>     Defendant - Appellant. | No. 95-5162 |

Appeal from United States District Court
for the Northern District of Oklahoma
(D.C. No. 92-C-414-E)

Submitted on the briefs:

David L. Pauling, City Attorney, and Ellen R. Hinchee, Assistant City Attorney, of Tulsa, Oklahoma, and Edward W. Bergmann and Noah A. Finkel of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, Illinois, for the appellant.

Donald M. Bingham, of Riggs, Abney, Neal, Turpen, Orbison & Lewis, of Tulsa, Oklahoma, for the appellees.

Before TACHA, BRISCOE, and MURPHY, Circuit Judges.

_____

BRISCOE, Circuit Judge.

_____

Defendant City of Tulsa, Oklahoma, (City) appeals the district court's decision granting relief in favor of plaintiffs, a group of fifteen Tulsa firefighters, on their claim for additional overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219. We affirm.

I.

Each plaintiff holds the rank of District Fire Chief (except plaintiffs E.L. Simpson and Billy J. Richardson, who are now retired). Plaintiffs filed this action on or about May 12, 1992, seeking compensation for alleged unpaid overtime wages. According to plaintiffs, they typically work a repeating cycle of one 24-hour tour of duty, followed by 48-hours off-duty, but receive no overtime pay. Plaintiffs further allege they are required to attend training sessions and staff meetings but receive no overtime compensation for time spent in these sessions and meetings.

In defending the action, the City characterized plaintiffs as exempt salaried employees under the FLSA. Although plaintiffs stipulated they met most of the criteria for "administrative" and "executive" exemptions under the FLSA, they denied that they met the "salary" test set forth in 29 C.F.R. § 541.118. After engaging in discovery, the parties waived a jury trial and jointly requested that the district court determine the issue of FLSA exemption as a matter of law.

On January 27, 1995, the district court issued a written order granting summary

2

judgment in favor of plaintiffs. In its order, the court applied the "salary" test and found that: (1) plaintiffs were paid an hourly rate, with provisions made for the accumulation of overtime; (2) plaintiffs' pay was subject to reduction for absences of less than a day; (3) plaintiffs could be disciplined by reductions in pay for reasons other than infractions of safety rules of major significance; and (4) plaintiffs were subject to reductions in pay for absences due to temporary military leave after City-paid military time had been exhausted, and for absences due to attendance in court as witnesses. Based upon these findings, the court concluded the City had failed to demonstrate that plaintiffs were salaried employees. The court rejected the City's assertion that the FLSA's "salary" test was inapplicable to public employers and concluded plaintiffs were entitled to receive overtime compensation. After a non-jury trial on the issues of willfulness and liquidated damages, the court awarded plaintiffs damages in the amount of $333,881.46 plus interest. The court rejected plaintiffs' claim for liquidated damages on the ground that the City's violation of the FLSA was made in good faith. Final judgment was entered on July 17, 1995, and the City filed its notice of appeal on August 10, 1995.

II.

The City has the burden of proving plaintiffs were exempt employees under the FLSA. Aaron v. City of Wichita, 54 F.3d 652, 657 (10th Cir.), cert. denied 116 S. Ct. 419 (1995). We review the district court's factual findings for clear error and its ultimate conclusion concerning applicability of the City's claimed exemptions de novo. Id.

III.

A. The FLSA's exemptions and related salary test

Under the FLSA, an employer must pay an employee overtime compensation at

one and one-half the employee's regular rate of pay for all hours worked by the employee in a given week in excess of forty hours. 29 U.S.C. § 207(a)(1). Notably, the FLSA exempts from its overtime compensation requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Here, the City contends plaintiffs fall within the "executive" and/or the "administrative" exemption(s) and are therefore not entitled to the claimed overtime compensation.

The "executive" and "administrative" exemptions are not specifically defined in the FLSA. Rather, the Department of Labor (DOL) is responsible for determining the operative definitions of these terms through interpretive regulations. 29 U.S.C. § 213(a)(1). Generally, DOL regulations are entitled to judicial deference, see Udall v. Tallman, 380 U.S. 1, 16 (1965), and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA.

In order to satisfy the overtime exemption for "administrative" or "executive" employees, an employer must satisfy a two-part test promulgated by the DOL, the "duties" test and the "salary" test. Barner v. City of Novato, 17 F.3d 1256, 1259-60 (9th Cir. 1994). Exemptions are to be narrowly construed, and the employer bears the burden of showing "the employee fits 'plainly and unmistakenly within the exemption's terms'-- under both the 'salary' test and the 'duties' test." Aaron, 54 F.3d at 657 (quoting Reich v. State of Wyoming, 993 F.2d 739, 741 (10th Cir. 1993)). Here, the parties agree the City can satisfy the "duties" test. Only the "salary" test is at issue.

To satisfy the "salary" test, "the employer must prove that the employees in question are paid on a salary basis rather than an hourly rate." Aaron, 54 F.3d at 657-58. Under 29 C.F.R. § 541.118(a), an employee is compensated on a salary basis if "under his

4

employment agreement he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." Under 29 C.F.R. § 541.118(b), "the salary may consist of a predetermined amount constituting all or part of the employee's compensation," and "additional compensation besides the salary is not inconsistent with the salary basis of payment."

## B. Public sector employers and the FLSA's salary test

As initially enacted in 1938, the FLSA did not apply to public employers or employees. See Lamon v. City of Shawnee, 972 F.2d 1145, 1149-50 (10th Cir. 1992) (discussing history of FLSA and its application to public sector employees), cert. denied, 507 U.S. 972 (1993); see also 57 Fed. Reg. 37,666-68 (1992) (same). In 1974, Congress amended the FLSA in an attempt to bring public employees within the scope of the Act. Fair Labor Standard Amendments of 1974, Pub L. No. 93-259, 88 Stat. 58, 60, § 6(a)(1), (a)(6). In 1976, however, the Supreme Court struck down the amendment and held that extending FLSA coverage to state and city governmental employees was inconsistent with state sovereignty. National League of Cities v. Usery, 426 U.S. 833 (1976). In 1985, the Supreme Court reversed itself and upheld the constitutionality of including public sector employees within the scope of the FLSA. Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985). Although Congress subsequently amended the FLSA in order to accommodate "the particular needs and circumstances of the States and their political subdivisions," S. Rep. No. 159, 99th Cong., 7 (1985), reprinted in 1985 U.S.C.C.A.N. 651, 655, Congress did not specifically address whether

5

the salary test, which was promulgated by the DOL years earlier, should apply to the public sector.  See Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, 99 Stat. 787.

In 1987, the DOL announced that, pending revision of its implementing regulations, it would not enforce the portions of the salary test concerning deductions for absences of less than a day for personal reasons, illness, or accident.  See Fed. Reg. 37,668 (1992).  Notably, this nonenforcement policy applied only with respect to those public sector employers who could demonstrate they were governed by a public accountability law, i.e., a provision in applicable State or local law that prohibited payments to an employee for absences of less than one day due to personal reasons, illness, or accident.  See id.  Moreover, notwithstanding this nonenforcement policy, the DOL did not bar employees' claims against public employers, including those governed by public accountability laws.  See id.

On September 6, 1991, the DOL passed an interim final regulation providing "that an otherwise exempt public sector employee who is paid according to a pay system that requires the use of paid leave and, absent the use of paid leave, reduces the employee's pay for absences of less than one work-day, will not be disqualified from exemption due to such pay system."  56 Fed. Reg. 45,824 (1991).  This interim final regulation effectively allowed state and local employers to continue to use pay systems based upon public accountability laws without losing "executive," "administrative," or "professional" exemptions for otherwise qualified employees.  See id.

On August 19, 1992, the DOL published its final regulation on this issue, codified at 29 C.F.R. § 541.5d, which provides in pertinent part:

6

(a) An employee of a public agency who otherwise meets the requirements of § 541.118 [the salary test] shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 [the executive, administrative, and professional exemption regulations] on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because--

(1) permission for its use has not been sought or has been sought and denied;

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

See 57 Fed. Reg. 37,677 (1992).

## C. The City's issues on appeal

*1. Did the district court err in concluding the salary test was applicable to public employers such as the City?*

Following the lead of other public employers recently embroiled in FLSA litigation, the City argued the salary test, as applied to public sector employers, is arbitrary and capricious and therefore invalid. The district court rejected the City's argument. On appeal, it is unclear whether the City is challenging only the salary test as it existed prior to the DOL's modifications in 1991-92, or is also challenging the current (post-September 6, 1991) salary test. We will assume the City is challenging both.

The principles for reviewing the City's challenge are well established. In reviewing an agency's interpretation of a statute which it is charged with administering, a court must first determine "whether Congress has directly spoken to the precise question at issue." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984). If Congress has directly spoken to the precise question and its intent is clear, "the

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If, however, Congress has not addressed the precise question at issue, the court must determine "whether the agency's answer is based on a permissible construction of the statute." Id. In cases such as the one at bar, where "Congress explicitly delegates responsibility for completing a statutory scheme by defining key terms . . . without supplying criteria for the exercise of the delegated responsibility, the scope of judicial review is extremely limited," and "about all the court can do is determine whether the agency's action is rationally related to the objectives of the statute containing the delegation." Mueller v. Reich, 54 F.3d 438, 442 (7th Cir. 1995) (construing validity of §§ 541.118 and 541.5d).

Only the Seventh and Ninth circuits have considered similar challenges to the validity of the salary test. See Service Employees Intern. Union, Local 102 v. County of San Diego, 60 F.3d 1346 (9th Cir. 1994) (SEIU), cert. denied, 116 S.Ct. 774 (1996); Mueller, 54 F.3d at 440-43. Both courts agreed that Congress did not specifically address whether the salary test should apply to the public sector. SEIU, 60 F.3d at 1351; Mueller, 54 F.3d at 442. However, examining different aspects of the salary test, the two courts reached different results in deciding whether the test was a permissible construction of the FLSA.

In Mueller, the Seventh Circuit held the current salary test, i.e., the salary test as modified by the DOL in 1991-92, is valid as applied to the public sector because it is rationally related to the objectives of the FLSA. In so doing, the Seventh Circuit specifically rejected the notion that the current salary test "should have gone further, that is, should have extended the exemption for public employees to the provision on

8

discipline." 54 F.3d at 441-42. On this latter point, the Seventh Circuit noted the DOL had considered but rejected exempting public employers from the salary test's discipline provision. Further, the Seventh Circuit held that "[n]either the principle of public accountability, nor any other principle of public administration . . . makes it imperative that public employers have th[e] power [to discipline by docking pay] with respect to their executive, administrative, and professional employees." Id. at 442.

In SEIU, the Ninth Circuit concluded the salary test, as it existed prior to September 6, 1991 (the date on which the DOL issued its final interim regulation), is invalid as applied to public sector employers. In reaching this conclusion, the Ninth Circuit noted that, notwithstanding Congress' intent for the executive and administrative exemptions to apply to the public sector, most public employees could not satisfy the salary test as it existed prior to September 6, 1991, because "virtually all" public employers were constrained by pay systems based on public accountability. 60 F.3d at 1352-53. Accordingly, the Ninth Circuit concluded the pre-September 6, 1991, salary test conflicted with congressional intent. Further, the Ninth Circuit concluded that "salvaging" the portions of the salary test that were not affected by public accountability pay systems would be "tantamount to rulemaking, a power with which [the federal courts] are not invested." Id. at 1354. In reaching this latter conclusion, the Ninth Circuit noted the DOL's pre-September 6, 1991, nonenforcement policy "covered the entire salary test, not just part of it; and essentially *no* valid salary test applicable to the public sector existed until the DOL finally conducted rulemaking in 1991 and 1992." Id.

We agree with both the Seventh and Ninth Circuits that Congress did not address the question of whether the salary test should apply to the public sector. Accordingly, we

9

proceed to determine whether the salary test, in its pre- and post-September 6, 1991,

form, is a permissible construction of the FLSA as applied to the public sector.

Beginning first with the current test, we find nothing that would call into question the

Seventh Circuit's holding in Mueller. To the contrary, we agree the current salary test, as

applied to the public sector, is rationally related to the objectives of the FLSA and is

valid. We reject the City's challenge to the current salary test.

As for the pre-September 6, 1991, salary test, we are unable to adopt the Ninth

Circuit's reasoning in SEIU. First, we disagree with the suggestion that all public sector

employers are governed by public accountability pay systems and were subject to the

DOL's 1987 nonenforcement policy. Although the majority of public sector employers

are perhaps governed by such pay systems, the facts of this case clearly demonstrate that

all are not. The DOL was obviously aware of this when it adopted its 1987

nonenforcement policy. As the express terms of that policy make clear, only those public

sector employers who could demonstrate their pay systems (1) were based upon public

accountability laws and/or principles, and (2) were adopted prior to April 15, 1986, could

take advantage of the nonenforcement policy. See 57 Fed. Reg. 37,668. We further

disagree with the Ninth Circuit's conclusion that the DOL's 1987 nonenforcement policy

applied to the entire salary test. Reviewing the relevant portions of the Federal Register

outlining the nonenforcement policy, we believe the policy applied only to the portions of

the salary test that concerned absences of less than one day due to personal reasons,

illness, or accident. See 57 Fed. Reg. 37,668; 56 Fed. Reg. 45,824. This conclusion is

bolstered by other official DOL statements which indicate that, in the DOL's eyes, the

remainder of the salary test remained applicable to all public employers. See, e.g., 57

10

Fed. Reg. 37670 (noting interim final rule was published on September 6, 1991, "to allow State and local governments to continue their public-accountability pay systems without incurring liability for overtime pay under FLSA to employees who would otherwise be exempt from the overtime pay requirements."); 56 Fed. Reg. 45,825 (stating "certain aspects" of salary test were "unduly restrictive when applied in the public sector.").

Departing from the Ninth Circuit's position in SEIU, we conclude the pre-September 6, 1991, salary test is valid as applied to public sector employers, such as the City, who are not governed by public accountability pay systems. Reviewing the DOL's 1987 nonenforcement policy, it is apparent there was no change whatsoever in the salary test with respect to those public sector employers (however limited the number may have been) who were not governed by public accountability pay systems. With respect to those employers (including the City in this case), we find nothing in the pre-September 6, 1991, salary test that is at odds with Congress' intent to make available the exemptions for executive, administrative, and professional employees. Like private sector employers, such public sector employers were perfectly capable of structuring their pay systems to comply with all aspects of the DOL's salary test. We reject the City's challenge to the pre-September 6, 1991, salary test.[1]

> 2. *Did the district court err in concluding public accountability exception of 29 C.F.R. § 541.5d was not applicable in this case?*

The district court found the City had not offered any evidence that its pay system

---

[1] Because the City in this case was not governed by a public accountability pay system, we reach no conclusion concerning the validity of the pre-September 6, 1991, salary test as applied to public sector employers governed by public accountability pay systems.

11

was established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability. The court concluded the public accountability exception of § 541.5d was not applicable, and § 541.5d was not applicable because the City had failed to demonstrate it otherwise met the requirements of the salary test. In particular, the court pointed to the fact that plaintiffs' pay was subject to reduction for absences of less than a day, as well as for court appearances and temporary military leave.

The City argues on appeal that § 541.5d does not require municipalities to prove their pay systems are based upon public accountability principles. We disagree. The DOL, the agency charged with implementing the FLSA, has consistently required public employers to demonstrate their pay systems are based upon public accountability laws or principles before they can benefit from the DOL's relaxed salary test standards. See Fed. Reg. 37,668 (1992). In particular, from early 1987 until September 6, 1991, public employers could only benefit from the DOL's nonenforcement policy if they were able to demonstrate they were governed by a public accountability pay system. Likewise, under the DOL's current regulations, § 541.5d requires a public employer to demonstrate it is governed by a public accountability pay system before it can benefit from that section's "relaxed" salary test standards. See 29 C.F.R. § 541.5d . Aside from these indications of DOL's intent, FLSA case law is clear that the employer bears the burden of demonstrating its right to an exemption, Aaron, 54 F.3d at 657, and we conclude this burden includes demonstrating that a particular pay system is based upon public accountability laws or principles. To hold otherwise would either place the burden on plaintiffs to demonstrate that a pay system is not based upon public accountability laws or

12

principles, or alternatively grant all public sector employees the right to rely upon §
541.5d. Neither applicable regulations nor relevant case law justifies these results.

After our review of the record, we agree with the district court that the City failed
to satisfy its burden of demonstrating its pay system is based upon a public accountability
law or principle. In <u>SEIU</u>, the Ninth Circuit held that "[p]ublic accountability is the
notion that 'governmental employees should not be paid for time not worked due to the
need to be accountable to the taxpayers for expenditure of public funds.'" 60 F.3d at 1352
n. 2 (quoting <u>Hilbert v. District of Columbia</u>, 23 F.3d 429, 435 (D.C.Cir. 1994)).
Although it is not clear what, if any, evidence the City presented on this point[2], on appeal
the City claims plaintiffs' salaries are paid from the City's general fund, which in turn is
funded by tax revenues, which in turn are required by the Oklahoma Constitution to be
levied and collected "for public purposes only." City's br. at 23. This general
constitutional provision, and its convoluted link to plaintiffs' salaries, is wholly
insufficient to allow us to conclude the City's pay system is based upon a public
accountability law as envisioned by the DOL. Moreover, the uncontroverted evidence in
this case indicates that salary deductions are discretionary on the part of the City.
Because public accountability pay systems <u>require</u> an employer to make deductions when
an employee is absent from work, the nature of the City's deduction policies makes it
obvious that the City is not governed by a public accountability pay system.

There is an additional basis for affirming the district court's decision. Under its

---

[2] Plaintiffs allege the City did not present any evidence to the district court on this
issue in connection with its motion for summary judgment, but attempted to introduce
evidence in connection with its motion to alter judgment after summary judgment was
granted in favor of the plaintiffs.

13

express terms, § 541.5d applies only if a public sector employee otherwise satisfies the requirements of the salary test; that is, ignoring deductions that a public sector employer may make for absences of less than one day due to personal reasons, illness, or injury, the employer must otherwise satisfy the test, and therefore cannot make any other deductions from an employee's salary based upon quantity or quality of work. Here, as discussed in greater detail below, it is uncontroverted that the City has an express policy of making deductions from plaintiffs' pay for disciplinary infractions. In light of this discipline policy, the City cannot "otherwise meet" the salary test requirements, and therefore cannot rely upon § 541.5d. The district court did not err in denying the City the benefit of § 541.5d.

3. *Did the district court err in concluding plaintiffs were not paid on a salary basis under 29 C.F.R. § 541.118(a), and therefore not exempt from the overtime provisions of the FLSA?*

On appeal, the City argues that, contrary to the conclusions of the district court, it satisfied the "salary" test of 29 C.F.R. § 541.118(a). In support of its argument, the City challenges the court's factual findings on three of the four components of the salary test.

*Payment: hourly rate or salary*--Plaintiffs each received a predetermined amount of pay based upon where each fell in the City's applicable classification and pay schedule. In addition to this predetermined amount of pay, some plaintiffs occasionally received overtime compensation at a straight-time hourly rate for hours worked when called back to an emergency outside of their regularly scheduled shifts. Six of the named plaintiffs were given compensatory time for working outside their regularly scheduled shifts. It is uncontroverted that the number of hours worked by a plaintiff in a given pay period was printed on his or her pay stub. The court considered these factors and concluded plaintiffs

14

were not salaried employees. The court rejected the City's assertion that overtime pay occasionally granted to plaintiffs fell within the scope of 29 C.F.R. § 541.118(b), which provides that "additional compensation besides the salary is not inconsistent with the salary basis of payment." Instead, the court concluded "[t]he payment of an hourly rate to district chiefs, with provision made for the accumulation of overtime, weighs in favor of a finding that Plaintiffs were not salaried employees." Joint append. II at 429.

We disagree with the district court. In Aaron, this court rejected the notion that receipt of compensation for overtime hours precludes a finding that an employee is paid on a salary basis. Instead, the court concluded overtime compensation could constitute "additional compensation besides the salary" under 29 C.F.R. § 541.118(b). 54 F.3d at 658. In addition, the Aaron court held inclusion on a pay stub of the number of hours covered by a paycheck does not preclude a finding that an employee is paid on a salary basis:

> Since overtime is not inherently inconsistent with one's status as a salaried employee, the fact that the firefighters' paystubs indicated the number of hours covered is also not inconsistent with salaried status. Such an accounting of hours is necessary to compute overtime compensation.

Id.

When the facts pertaining to plaintiffs' pay are reviewed in light of Aaron, we conclude plaintiffs received a predetermined salary and were not hourly employees. This factor weighs in favor of the City's claimed exemptions.

*Effect of absences from work of less than one day*--Although the regulations allow an employer to make deductions when an employee is absent for a day or more for personal reasons, sickness, or disability, without affecting the employee's salaried status, see 29 C.F.R. §§ 541.118(a)(2) and (3), an employer is limited in the deductions it may

15

make when an employee is absent for less than one day. "If the employer docks the employee's pay for an absence of a few hours on a particular day, the implication is that the employee really is expected to work the same number of hours every day, implying in turn that he really is an hourly rather than a salaried worker and that his salaried status is an evasion of the statute." Mueller, 54 F.3d at 442.

At least three circuits have held that employees governed by policies penalizing them for absences of less than one day (at least when the penalty involves possible loss of pay) are not salaried employees, and therefore not exempt "executive" employees under 29 C.F.R. § 541.1. Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C.Cir. 1993); Martin v. Malcolm Pirnie, 949 F.2d 611, 617 (2d Cir. 1991), cert. denied, 506 U.S. 905 (1992); Abshire v. County of Kern, 908 F.2d 483, 486 (9th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). Other circuits have held such a policy does not preclude exemption unless an employee's pay, as opposed to compensatory leave, is actually docked. McDonnell v. City of Omaha, 999 F.2d 293, 297 (8th Cir. 1993), cert. denied, 114 S.Ct. 1188 (1994); York v. City of Wichita Falls, 944 F.2d 236, 242 (5th Cir. 1991); Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 805 (11th Cir. 1991).

In Carpenter v. City & County of Denver, 82 F.3d 353 (10th Cir. 1996), this court recently joined the first group of circuits, and held the phrase "subject to reduction," as used in 29 C.F.R. § 541.118(a), means "the possibility and not the actuality of a reduction in pay removes an employee from exempt status." Id. at 359. The court held, where an employee is governed by a policy that requires his or her leave time to be reduced for absences, disciplinary infractions, etc., the quality or quantity of the employee's work

16

may ultimately reduce the amount of the predetermined salary received by the employee if the employee's leave time is exhausted. In accordance with Carpenter, it is clear that, if an employer's policy concerning absences of less than one day merely creates the possibility of a reduction in pay, the "salary" test is not met with respect to employees subject to that policy.

Here, there is an unwritten City policy that plaintiffs are, and have been at all pertinent times, subject to having their pay reduced for absences of less than a day. Under this unwritten policy, an employee's sick leave, vacation leave, or accumulated compensatory time could be reduced for such absences. However, if an employee does not have sufficient accumulations of sick leave, vacation leave, or compensatory time, his or her pay is subject to being docked. The parties have stipulated that "[e]ach of the [p]laintiffs from time to time has been absent from duty, with approval, for less than one day, and his accumulated vacation leave or compensatory time was reduced on an hour-for-hour basis." Joint append. II at 403. The parties have further stipulated that "[n]o [p]laintiff has suffered any reduction in his regular paycheck as a result of such absences." Id.

On appeal, the City argues neither of the stipulations concerning this unwritten policy is "evidence of an express City policy that the District Chiefs' actual pay is subject to reduction." City's br. at 14. The City argues that "[b]oth stipulations were written for the purpose of litigation before the district court, not as policies governing the compensation of City employees, including the District Chiefs." Id. If this argument were accepted, the weight accorded any party's stipulation would be seriously eroded. More important, holding a policy is not "express" unless it is written would allow an

17

employer to adopt a multitude of unwritten policies that fly in the face of the salary test, yet deny the existence of those policies during FLSA litigation.  In the end, the City is bound by its stipulations, and we conclude there was an "express" policy that created the possibility of salary reductions for absences of less than one day.  We conclude the City's policy concerning absences of less than one day is inconsistent with the salary test.

*Jury duty, witness appearances, temporary military leave*--An employer may not make deductions from an employee's predetermined salary for jury duty, witness appearances, or temporary military leave without affecting the employee's salaried status. 29 C.F.R. § 541.118(a)(4).  An employer may, however, "offset any amounts received by an employee as jury or witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption."  Id.

Here, § 311 of the City's Personnel Policies and Procedure Manual provides that employees "shall be entitled to no more than twenty (20) working days paid leave per calendar year, travel time inclusive," for military training purposes.  Plaintiffs' suppl. append. at 6.  With respect to military leave for active duty purposes, the manual provides employees are "entitled to a leave of absence without loss of pay during the first thirty (30) calendar days of such leave."  Id.  Thus, an employee must use alternative leave allowances (i.e., vacation or sick time), be docked pay, or take leave without pay if his or her military leave exceeds 30 days (if the military leave is for active duty) or 20 days (if the leave is for military training).  As for absences due to jury service and/or appearances as a witness, the manual provides leave with pay will be granted "[t]o serve as a juror," or "[t]o testify in court on City-related matters."  Plaintiffs' suppl. append. at 7.  The manual further provides "[l]eave without pay will be granted to employees for Court appearances

18

which do not meet the above criteria for leave with pay or, at the employee's option, accrued vacation time or compensatory time may be used." Id. Although the City now attempts to rely upon provisions of the collective bargaining agreement between the City and plaintiffs' union concerning court and jury leave, there appears to be little variation in how court and jury leave are handled in the collective bargaining agreement versus the manual. The only noticeable difference is the collective bargaining agreement arguably allows an employee to receive leave with pay if he or she is serving as a witness in a non-City-related case in which the employee is not a party. Aside from this difference, both the collective bargaining agreement and the manual indicate an employee's pay will be docked if he or she is absent to appear in a case in which he or she is a party. In such a situation, it appears the employee can choose to use his or her accrued annual leave in lieu of being docked in pay.

The district court found that "[p]laintiffs are subject to reduction in pay for absences due to temporary military leave, after City-paid military leave time has been exhausted." Joint append. II at 434. The court further found that "[a]bsence due to attendance in court as a witness also subjects Plaintiffs to a reduction in pay." Id. The court concluded these findings were "incompatible with Plaintiffs' salaried status." Id.

We disagree with the district court's conclusions concerning the City's military leave policy. Notably, the DOL's ban on military leave deductions specifically refers to "temporary military leave," a phrase that is not defined in the regulations. Two federal district courts construing this phrase have suggested that military leaves of absence greater than 15-30 days are not temporary, and that employers may therefore make deductions for longer absences. Close v. State of New York, No. 94-CV-0906, 1996 WL

19

67979 (N.D.N.Y. Feb. 13, 1996); Quirk v. Baltimore County, 895 F. Supp. 773, 782 (D.Md. 1995).  As noted by the Close court, National Guard and Reserve service specifically require only 15 and 14 days, respectively, of active duty training each year. 1996 WL 67979 at *6.  As further suggested by the Quirk court, only a full-scale war would likely require anything beyond this brief period, and would clearly be beyond the scope of "temporary military leave."  895 F. Supp. at 782.  We agree with these opinions and conclude the City provides plaintiffs more than enough time to fulfill National Guard and/or Reserve obligations, and any potential deductions for leaves beyond 20 or 30 days would fall outside of § 541.118(a)(4)'s ban on "temporary military leave" deductions.

We also disagree with the district court's conclusion that the City's leave policy concerning jury duty and witness appearances violates § 541.118(a)(4).  In Shockley v. City of Newport News, 997 F.2d 18, 24 (4th Cir. 1993), the court held that an employer need not provide paid leave for an employee to engage in personal litigation.  Here, the only time the City does not grant an employee paid leave is if he or she is appearing, as a party or a witness, in a non-City-related matter.  Under Shockley, this policy appears to be substantially permissible, the only possible exception being if an employee's pay is reduced for appearance as a witness in a non-City-related matter in which he or she is not a party.  We conclude the City's policy concerning absences for jury duty, witness appearances, and temporary military leave is consistent with the salary test.

*Docking of pay for disciplinary infractions*--In order to maintain an employee's salaried status for FLSA purposes, an employer must limit disciplinary pay deductions to "[p]enalties imposed in good faith for infractions of safety rules of major significance." 29 C.F.R. § 541.118(a)(5).  Here, the City stipulated that, "[b]y written City policy,

20

Plaintiffs' pay is, and at all pertinent times was, subject to reduction as a form of discipline, including suspension without pay, imposition of a fine, and demotion." Joint append. II at 403. Further, the court found uncontroverted evidence "that district chiefs have been disciplined, on more than one occasion, by a reduction in pay for a reason other than an infraction of a safety rule of major significance." Id. at 434. Based upon this uncontroverted evidence, the district court concluded "the City's disciplinary policy is inimical to its assertion that Plaintiffs are salaried employees." Joint append. II at 434. Significantly, the City has not challenged the court's factual findings on this issue or the court's legal conclusions. Accordingly, it is evident the City's disciplinary policy is inconsistent with the salary test.

*Conclusion*--The City has failed to satisfy two of the four components of the salary test. Most notably, the City's disciplinary policy violates the salary test because it allows plaintiffs' pay to be reduced for disciplinary infractions. The City's policy concerning leaves of absence of less than one day also violates the salary test. We conclude the City has not satisfied the salary test and cannot establish its claimed exemptions. We therefore affirm the district court's findings of liability against the City and in favor of plaintiffs.

> 4. *Did the City save its claimed exemptions under the "window of correction" provided by 29 C.F.R. § 541.118(a)(6)?*

The City argues that, even if it has failed to satisfy the salary test, it is entitled to rely upon the "window of correction" provided by 29 C.F.R. § 541.118(a)(6), which states:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable . . . during the entire period

21

when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

The initial problem with this argument is that it was not presented by the City to the district court. Issues raised for the first time on appeal will not be reviewed "except for the most manifest error." Sac and Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir.), cert. denied, 116 S.Ct. 57 (1995). Here, the City has not claimed and we do not conclude this issue rises to the level of "manifest error."

Even if we were to consider the City's argument, we find no merit to it. The "window of correction" provided by § 541.118(a)(6) allows employers to treat otherwise eligible employees as salaried, regardless of the employer's one-time or unintentional failure to adhere to § 541.118(a)'s requirements. Auer v. Robbins, 65 F.3d 702, 711 (8th Cir. 1995), cert. granted 116 S. Ct. 2545 (1996). However, it is not available if the employer has a settled policy of making improper deductions from compensation. Auer, 65 F.3d at 711. The City has at least one settled policy of making improper deductions from the plaintiffs' compensation (i.e., deductions from pay for disciplinary infractions), and is not entitled to the "window of correction."

5. *Did the City establish its right to a partial exemption under 29 U.S.C. § 207(k)?*

After a non-jury trial on the issue of damages, the district court found the City "failed to sustain its burden of proof under 29 U.S.C. § 207(k) [of establishing a work period greater than 7 days]," and that plaintiffs' "back overtime wages should be calculated under 29 U.S.C. § 207(a)(1), and the applicable work period is a [40-hour] workweek." Joint append. II at 453. In its final issue on appeal, the City challenges the

22

court's findings, claiming it "has adopted a nine-day work period of [72] hours to accommodate its fire-fighting employees who work shifts of 24 hours on duty followed by 48 hours off duty."  City's br. at 31.

Section 207(a)(1) contains the FLSA's basic provisions concerning payment of overtime wages and requires employers to pay overtime to employees who work more than 40 hours per week.  29 U.S.C. § 207(a)(1).  Although a public sector employer with law enforcement or fire protection personnel can choose to conform to the maximum hour and overtime provisions of § 207(a)(1), it may adopt an alternative scheme under § 207(k), which provides a partial exemption from the standard overtime provisions.  Lamon, 972 F.2d at 1150.  Section 207(k) raises the regular rate ceiling and provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities . . . if--
> > (1)  in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days . . . ;  or
> > (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if  lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k).  Section 207(k)'s "work period concept was intended to ease the overtime burdens of certain public employers by allowing them to average their employees' duty hours over the designated work period, from seven to twenty-eight days in length."  Avery v. City of Talladega, 24 F.3d 1337, 1344 (11th Cir.1994).

23

In regulations accompanying § 207(k), the DOL has established that 212 hours are the maximum number of hours a fire protection employee may work in a work period of 28 days before the employee must be paid an overtime wage. See 29 C.F.R. §§ 553.201 and 553.230. For a nine-day work period (as claimed by the City here), the DOL has established that 68 hours are the maximum number of hours a fire protection employee may work before he or she is paid an overtime wage. Id. Finally, for the minimum seven-day work period, the DOL has established that 53 hours are the maximum number of hours a fire protection employee may work before he or she is paid an overtime wage. Id.

A public sector employer bears the burden of establishing that it qualifies for a § 207(k) exemption. Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996). To qualify for the exemption, the employer must establish the employees in question have a work period of at least seven, but not more than twenty-eight, consecutive days. See Avery, 24 F.3d at 1343. This is normally a question of fact, Barefield, 81 F.3d at 710, governed by a preponderance of evidence standard. Lamon, 972 F.2d at 1154.

"The 'establishment' of a 7(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days." McGrath v. City of Philadelphia, 864 F.Supp. 466, 476 (E.D.Pa. 1994) (citing Lamon, 972 F.2d at 1154). "Alternatively, a public employer may establish a 7(k) work period even without making a public declaration, as long as its employees actually work a regularly recurring cycle of between 7 and 28 days." Id. (citing Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1992)).

Reviewing the record on appeal, we are unable to conclude the district court's

24

factual findings on this issue are clearly erroneous. The joint appendix, which was filed by the City, includes only 7 of approximately 112 pages from the damage hearing transcript. The only reference in these 7 pages to the work period issue is a colloquy between the district court and the City's counsel in which counsel argues the City "did not have to establish such a [work] period for what we considered in good faith [to be] exempt employees." Joint append. at 448. Also included in the record on appeal is plaintiffs' supplemental appendix which contains approximately 20 additional pages from the damage hearing transcript. Included therein is the testimony of the City's employee relations manager, who essentially admitted the City had not established a work period for the District Fire Chiefs. Although the City now argues it established a nine-day work period for plaintiffs via certain provisions of the collective bargaining agreement, there is simply no indication in the record on appeal that the City made this argument in its memoranda of law or at the time of the damage hearing. Because the evidence in the record on appeal pertaining to the work period issue supports the factual findings of the district court, we conclude the court did not err in rejecting the City's claimed exemption under § 207(k).

IV.

The judgment of the district court is AFFIRMED.