129 F.3d 1267
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ILLINOIS CONFERENCE OF TEAMSTERS AND EMPLOYERS WELFARE FUND,
Plaintiff-Appellee,
v.
Steve Gilbert TRUCKING, Defendant-Appellant.
 No. 97-1555.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 28, 1997.
Decided Nov. 18, 1997.
 
 Appeal from the United States District Court for the Central District of Illinois, No. 92-3267; Richard Mills, Judge.
 Before BAUER, Circuit Judge KANNE, Circuit Judge, and WOOD, Circuit Judge.
 
 ORDER
 
 1
 With any luck, this order should finally put to rest the issues arising out of the reluctance of defendant-appellant Steve Gilbert Trucking ("Gilbert Trucking" or "company") to make payments to plaintiff-appellee, the Illinois Conference of Teamsters and Employers Welfare Fund ("Fund"), as required by a collective bargaining agreement and the Employee Retirement Income Security Act ("ERISA"). In Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361 (7th Cir.1995) ("Gilbert I "), this panel affirmed the district court's grant of summary judgment to the Fund on the question of liability, but reversed as to the measure of damages and remanded for further proceedings on that issue. On remand, the question of damages was tried to the court, which found that Gilbert owed the Fund $399,014.24 for delinquent contributions, $47,881.71 in liquidated damages, $1,600 in audit charges, and reasonable attorney's fees and costs. We affirm, and, in addition, grant the Fund its reasonable attorney's fees and costs for this appeal.
 
 
 2
 * We assume familiarity with the facts in this case, which were spelled out in detail in Gilbert I, so we will only briefly recap and update the relevant facts. Steve Gilbert runs Steve Gilbert Trucking, a gravel and trucking business in central Illinois. On March 19, 1990, he signed an Articles of Construction Agreement ("Agreement") between the Associated General Contractors of Illinois and the Illinois Conference of Teamsters. At the same time, he signed a Participation Agreement which bound Gilbert Trucking to pay to the Fund contributions calculated on the basis of the hours of "covered" work, meaning work performed by Gilbert Trucking drivers who made deliveries to "construction sites."
 
 
 3
 Gilbert Trucking made one contribution to the Fund in August 1990 for work performed by two employees in July 1990, and hasn't made another payment since. The company also has failed to maintain the payroll records required by ERISA to support reporting and auditing of Gilbert Trucking's pension obligations under the Participation Agreement. 29 U.S.C. § 1059(a)(1).
 
 
 4
 After repeatedly notifying Gilbert Trucking of its delinquency, in August 1992 the Fund notified the company that it planned to conduct an audit. The Fund then filed this suit to compel Gilbert Trucking to permit the audit and to pay the associated fees. Gilbert Trucking acquiesced, and the Fund's auditor eventually concluded that the company owed the Fund $196,632.45 for contributions it failed to make during 1991 and 1992. Gilbert Trucking neglected to pay up, and the Fund amended its complaint to include a demand for a monetary judgment for the delinquent contributions, plus late fees, audit fees, attorney's fees, and costs. The Fund then moved for summary judgment, which the district granted as to both liability and damages. On appeal, we rejected Gilbert Trucking's "specious[ ] ... eleventh hour fraud in the execution defense," Gilbert I at 1366, and agreed with the district court that Gilbert Trucking was bound by the Agreement and the Participation Agreement to contribute to the Fund. We remanded, however, for further findings of fact as to damages in light of Gilbert's assertions that genuine issues of fact existed with respect to the Fund's treatment of year-end bonuses in the wages on which it based its calculations of hours worked and its assumptions about what percentage of the hours for which Gilbert Trucking's drivers were paid counted as "covered" work, as that term was defined in the Agreement. Id. at 1366-67.
 
 
 5
 While the proceedings outlined above were underway, Gilbert Trucking signed an extension of the Agreement, covering the period from May 1, 1992, through April 30, 1995, and the Fund conducted a second audit of the company's payroll records covering all of 1993 and the first nine months of 1994. After remand, the Fund supplemented its complaint with a claim for additional contributions based on the second audit, bringing its total claim to $457,657.92, plus fees and costs.
 
 
 6
 In its first audit, covering 1991 and 1992, the Fund calculated Gilbert Trucking's delinquency based on the gross W-2 wages of Gilbert Trucking's trucker employees, divided by a standard hourly rate, since the company had failed to maintain the payroll records necessary for a precise calculation of payments due. (On remand, the Fund revised its calculations downward to take account of year-end bonuses.) In the second audit, covering 1993 and most of 1994, the Fund was confronted again with payroll records at Gilbert Trucking that did not provide sufficient information to develop a precise count of covered hours worked and contributions due. Again, the Fund used gross wages as the basis for its calculations of hours worked, but this time it included not only the reported W-2 wages of Gilbert Trucking drivers, as it had in the first audit, but also the reported 1099 payments to owner/operator truckers employed by Gilbert Trucking. The Fund justified this change by reference to this court's intervening decision in Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451 (7th Cir.1994), which held that calculations such as those in which the Fund was engaged could include truckers who were owner/operators, and whose income was reported on 1099 forms rather than W-2 forms, as well as regular W-2 wage earners.
 
 
 7
 After the close of discovery, at the final pretrial conference on October 30, 1996, Gilbert Trucking submitted a witness list with three new names on it. The new witnesses were to testify that in its dealings with other parties, the Fund had interpreted the term "construction sites" to narrow the definition of "covered" work to apply only to work on state and federally funded "construction sites," rather than, as the plain language of the Agreement indicated, to all "construction sites." According to Gilbert Trucking, this extrinsic evidence was admissible to clarify the meaning of the allegedly ambiguous term "construction sites" in the Agreement, as it applied to the definition of "covered" work subject to contributions under the Participation Agreement. The district judge granted the Fund's motion in limine calling for the exclusion of the witnesses.
 
 
 8
 On December 30, just before trial (which was held January 2-3, 1997), Gilbert Trucking filed a motion in limine of its own, seeking to prevent the Fund from including evidence of the hours worked by owner/operator truck drivers employed by the company. Gilbert Trucking claimed unfair surprise. It argued that the Fund's responses to interrogatories months earlier had deceived the company into believing that damages calculations would be based exclusively on the hours worked by W-2 wage earners. The court rejected Gilbert Trucking's motion and the trial proceeded, with judgment for the Fund.
 
 
 9
 Gilbert appeals only the district court's rulings on the two motions in limine, not the amount of damages, fees, or costs, or any other aspect of the proceedings. Denial of a motion in limine is reviewed for abuse of discretion. United States v. Watts, 95 F.3d 617, 619 (7th Cir.1996). A court abuses its discretion only when no reasonable person could adopt its position. United States v. Fauls, 65 F.3d 592, 595 (7th Cir.1995).
 
 II
 
 10
 Gilbert Trucking complains first that the district court erred when it granted the Fund's motion in limine. In its motion, the Fund called on the district court to reject the company's last-minute attempt to bring in extrinsic evidence of the meaning of "construction sites," as that term applied to the meaning of "covered" work under the Agreement. Gilbert Trucking's argument stands or falls on whether the term "construction sites" was, in fact, ambiguous. Whether a collective bargaining agreement is ambiguous is a question of law which this court reviews de novo. Alexander v. City of Evansville, Indiana, 120 F.3d 723, 727 (7th Cir.1997).
 
 
 11
 "A collective bargaining agreement that lends itself to only one reasonable interpretation is considered to be unambiguous," id. at 727-28, and if so, "the court should not resort to extrinsic evidence to interpret the agreement." Id. at 727. On the other hand, "extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense." Bidlack v. Wheelabrator Corp., 993 F.2d 603, 608 (7th Cir.1993) (en banc); Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1187 (7th Cir.1994). Even when seeking admission of extrinsic evidence to show variance from unambiguous language, however, "there must be either contractual language on which to hang the label of ambiguity or some yawning void ... that cries out for an implied term." Bidlack, 993 F.2d at 608 (opinion of Posner, J.).
 
 
 12
 According to Gilbert Trucking, the term "construction sites" is ambiguous and fails to define clearly the scope of work covered by the Agreement, and thus also fails to provide a sound basis on which to set the hours worked for which the company was required to contribute to the Fund. The relevant passage of the relevant portion of the Agreement, Article II, reads as follows:
 
 
 13
 This agreement covers ... drivers on trucks delivering aggregate material to stock pile on construction sites or to temporary plants or locations, the purpose of which is to serve particular construction sites, and drivers on any other vehicles operated on construction projects when used to defeat the purpose of this agreement.
 
 
 14
 Gilbert Trucking does not argue that any language in the Agreement modifies or appears to modify the key term here, "construction sites," nor does it point to any yawning void that cries out for an implied term.
 
 
 15
 The district court rejected Gilbert's motion out of hand, relying on cases such as Central States, S.E. and S. W. v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir.1989), and Central States, S.E. and S. W. v. Joe McClelland, Inc., 23 F.3d 1256, 1259 (7th Cir.1994), for the rule that "extrinsic evidence may not be used to create an ambiguity in a pension or welfare fluid agreement subject to ERISA," id., as the Fund is in this case. While the Gerber-McClelland rule may not be absolute, it is very nearly so, because multi-employer benefit plans (such as the Fund in this case), enter form contracts with numerous employers, all of whom rely on each other to make standard payments in conformance with the plain terms of the agreement. Allowing individual employers to modify their obligations based on extrinsic evidence, in the absence of overwhelming indicators of some universal, systemic, and ongoing practice would not only undermine the viability of the fluid, it would run counter to the purposes of ERISA, the statute under which such funds operate.
 
 
 16
 Gilbert Trucking's attempt to duck its responsibility to the Fund, and, indirectly, to all the other employers who participate in it and employees who rely on it, does not even come close to reaching that level of ambiguity. This court's observation in Central States, S.E. and S. W. v. Central Cartage, 69 F.3d 1312 (7th Cir.1995), is equally pertinent here:
 
 
 17
 [T]he fact remains that the [extrinsic evidence] does not purport to decode ambiguous language; it expresses an understanding inconsistent with the language. As we emphasized in Gerber Truck Service and Joe McClelland, a multi-employer pension agreement is not a normal two-party contract for which evidence of idiosyncratic meaning may be used to depart from the objective meaning of the words.
 
 
 18
 Id. at 1315. As the district court concluded, "the underlying contract is unambiguous. It refers to construction sites without any qualification and Defendant has not cited any provision of the contract that casts the meaning of that term into doubt.... The court finds that the term 'construction sites' has its ordinary meaning: all construction sites." So, whether Gilbert Trucking meant to argue that the entire industry is idiosyncratic, or that the Fund is often idiosyncratic, or that just the reading shared by the Fund and Gilbert Trucking is, the company was not entitled to make that argument to the district court. This necessarily means that the district court did not abuse its discretion in denying the motion in limine.
 
 
 19
 Even if this court were to find the Agreement sufficiently ambiguous to permit admission of extrinsic evidence, we would still affirm the district court's decision not to do so. Gilbert Trucking's late submission of its witness list constituted a failure to comply with the court's discovery order, opening the company up to sanctions. See, e.g., Jardien v. Winston Network, Inc., 888 F.2d 1151, 1156 (7th Cir.1989). The district court did not abuse its discretion when it excluded witnesses who were not brought forward until after the end of discovery. Id. See also Bonds v. District of Columbia, 93 F.3d 801, 807-09) (D.C.Cir.1996); Tamari v. Bache & Co., 729 F.2d 469, 473-74 (7th Cir.1984); Fed.R.Civ.P. 37(b)(2)(B).
 
 
 20
 Gilbert Trucking's second argument is that the district court erred when it denied the company's motion in limine to exclude the Fund's evidence of damages derived from its audit of the company's payroll records covering owner/operators. The court should have granted the motion, according to Gilbert Trucking, because the Fund failed to notify it that the damages claim for 1993-94 would include hours worked by owner/operators. The district court rejected this argument, relying on the Fund's disclosures three months earlier in answers to interrogatories, which (a) referred to the article of the Agreement dealing with owner/operators ("Article 25--Owners & Drivers"); (b) listed owner/operators and drivers working on commission as among those whose work was covered by the provisions requiring contributions to the Fund; and (c) listed in an attachment the owner/operators as among those whose wages it had reviewed in its second audit. With this information in its possession, Gilbert Trucking simply could not have been unfairly surprised by the Fund's position on owner/operators.
 
 
 21
 The fact that the same interrogatories stated that the same "methodology" was used for both audits does not rebut the fact that the Fund notified Gilbert Trucking that it was planning to count the hours of owner/operators in its damages calculations. The district court was not required to construe all ambiguities in the Fund's responses to interrogatories in favor of Gilbert Trucking. It was merely required not to abuse its discretion, and it didn't.
 
 
 22
 We therefore conclude that the district court did not err in either of its rulings on the motions in limine. The judgment below is AFFIRMED. The Fund is entitled to its reasonable attorney's fees and costs needed to defend this judgment on appeal. 29 U.S.C. § 1132(g)(2)(D). The Fund shall submit documentation of its fees and costs to this court within 15 days.