Steve **HERGENRETER, Bruce Ahrens, David Beshey, Matthew Brown, Jim Chastain, Bruce Dolder, Dennis Feldmann, Michael Fitzgerald, Eugene Habben, Mitch Halverson, Ronald Hedeen, Loren Helgevold, David Konvalinka, Kerry Miklo, Paul Neeson, Richard Newman, Robert Ostbloom, Thomas Peart, Donald Peters, Mark Peters, Timothy Pille, Martin Reeck, James Reis, James Sells, Richard Stein, Steven Teske, John Thoma, Michael Thoma, William Thoma, Jon Ulstad, John Webster, and Woodward Wolfe, Plaintiffs,**

v.

**CITY OF FORT DODGE, IOWA, Defendant.**

No. C96–3145–MWB.

United States District Court, N.D. Iowa, Central Division.

Dec. 11, 1997.

MacDonald Smith, Michael Smith, Smith & McElwain Law Offices, Sioux City, IA, for Plaintiffs.

Maurice C. Breen, Price, Breen & Pearson, Fort Dodge, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ............................................................... 1142
    A. Procedural Background ............................................. 1142
    B. Factual Background ................................................. 1143

II. LEGAL ANALYSIS ........................................................... 1144
    A. Standards For Summary Judgment ............................. 1144
    B. Overtime Pay Requirements Under The FLSA ............... 1145
    C. The "Regular Rate" Of Pay ..................................... 1146
        1. Computing "regular rate" of pay ......................... 1146
        2. The Firefighters' "regular rate" of pay ................ 1147

III. CONCLUSION ............................................................... 1150

Although an old adage states that figures never lie, precisely what they prove is often uncertain. Here, plaintiff firefighters contend that figures prove the defendant city has been improperly paying them for regular and overtime hours since July 25, 1995, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. Looking at the same computations, the defendant city asserts that it has been paying its firefighters regular and overtime pay in compliance with the FLSA. Each side has moved for partial summary judgment on this issue, leaving some figuring, and a good deal of contemplation of precisely what all the figures prove or leave open to further proof, to the court.

## I. INTRODUCTION

### A. Procedural Background

This action, filed on October 4, 1996, was brought by thirty-four firefighters employed or formerly employed by the defendant City of Fort Dodge, Iowa, seeking damages, attorneys fees, and declaratory and injunctive relief from allegedly willful violations of provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a). The complaint, in six counts, alleges the following violations of the FLSA: (1) failure to pay proper regular and overtime wages for regular duties in violation of 29 U.S.C. §§ 207(a)(1), 207(k), and 215(a)(2); (2) failure to pay regular and overtime wages for extra personal holidays in violation of 29 U.S.C. §§ 207(a)(1), 207(k), and 215(a)(2); (3) failure to pay regular and overtime wages for time spent at the state firefighters' convention and the annual state AFL—CIO convention for representatives of

the union local in violation of 29 U.S.C. §§ 207(a)(1), 207(k), and 215(a)(2); (4) retaliation for assertion through the union local of rights under the FLSA concerning pay for time at conventions in violation of 29 U.S.C. § 215(a)(3); (5) retaliation for assertion through the union local of rights under the FLSA concerning pay for regular duties in violation of 29 U.S.C. § 215(a)(3); and (6) retaliation for assertion through the union local of rights under the FLSA concerning extra personal holidays in violation of 29 U.S.C. § 215(a)(3). Most, but not all, of the claims stem from the City's unilateral change in the manner in which it would pay regular and overtime pay as of July 25, 1995, announced in a notice dated July 11, 1995.

On October 2, 1997, the City moved for summary judgment on the issue of whether it had paid regular and overtime hours for regular duties in compliance with the FLSA.[1] The Firefighters responded with a resistance and cross-motion for partial summary judgment on October 10, 1997. They contend that there is no genuine issue of material fact as to the City's liability on Counts I through V of their complaint. However, they have asserted no argument, and have presented the court with no facts, concerning pay for extra personal holidays or convention time. Thus, the court concludes that the only issues properly before it on cross-motions for partial summary judgment concern regular and overtime pay for regular duties.

Both parties requested oral arguments on the motions. However, the court's schedule has not permitted the scheduling of oral arguments and the time until trial, which is scheduled to begin on January 12, 1998, is now short.

### B. Factual Background

The court will not attempt here an exhaustive statement of the undisputed and disputed facts of the case. Instead, the court will discuss disputed and undisputed facts to the extent necessary to resolve the cross-motions for partial summary judgment in its legal analysis. However, a brief statement of the factual backdrop for the Firefighters' claims in this action is provided here to place the court's legal analysis in context.

From at least August 1, 1985, pursuant to a collective bargaining agreement, the City paid its Firefighters a base salary based on a fifty-six hour workweek. The Firefighters worked a twenty-seven day pay period, which translates into 216 hours per pay period. The Firefighters are actually divided into three shifts, each of which works one twenty-four hour shift followed by forty-eight hours off. Again, that means that, in every pay period, each Firefighter was scheduled for nine twenty-four hour shifts, totaling 216 hours.

In an effort to comply with the regular and overtime pay requirements of the FLSA, beginning August 1, 1985, the City announced that it would allow each Firefighter twelve hours of paid time off during each pay period to reduce their hours worked to the 204 hours permitted as regular time under the FLSA, and would pay time-and-a-half for hours worked in excess of 204. Under the FLSA, the parties agree that firefighters who work a twenty-seven day pay period are entitled to overtime pay for hours worked in excess of 204. The Firefighters' union local accepted these pay conditions and the Firefighters contend that they became part of each successive collective bargaining agreement. None of the Firefighters' FLSA claims are based on any improper payment pursuant to this agreement from August 1, 1985, through July 25, 1995.

However, on July 11, 1995, shortly after another collective bargaining agreement purportedly carrying forward these terms came into effect, the City provided a notice to all personnel from the Fire Chief concerning FLSA time off. Exhibit B to the Affidavit of Glenn Goebels. The text of that notice states in its entirety as follows:

---

1. Although not denominated as such, the City's motion is only for *partial* summary judgment, because it does not purport to dispose of claims related to pay for extra personal holidays or convention time, although it may dispose of claims related to retaliation for assertion of rights concerning pay for extra personal holidays and convention time to the extent the retaliation alleged is the purported change, instituted on July 25, 1995, in the manner in which the Firefighters would be paid for regular duties.

Effective with the next 27 day cycle for computing Flsa [sic] time off, beginning July 25th. The city will begin paying for the 12 hours in question versus allowing the time off. Hours worked shall be the determining factor whether payment shall be received. All hours worked between 204hrs [sic] and 216hrs [sic] will receive half time pay for the 12 hours in question. Any time off will result in a reduction in pay for the hours in question.

All call back time will continue to be according to the contract.

*Id.*

The Firefighters contend that this change in the manner of calculating pay improperly changed their base salary from a base for 204 hours to a base for 216 hours without a comparable increase in their rate of pay, thereby improperly reducing both their regular hourly and overtime rates of pay. They therefore contend that since July 25, 1995, they have not been paid either their proper regular or proper overtime pay for regular duties. The City contends that the base salary had always been—and after July 25, 1995, continued to be—based on 216 hours per pay period. Therefore, the City asserts that payment of a half-time premium for hours worked between 204 and 216, and time-and-a-half for hours over 216, complies with the FLSA. The City asserts that its decision to pay a half-time premium for time worked over 204 hours, instead of allowing paid time off to reduce hours worked to 204, did not change either the 216 hour base for the salary or the regular hourly rate, although it did eliminate twelve hours of paid time off each pay period.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Secu-*

*rity State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will proper-

ly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. With these standards in mind, the court turns to consideration of the parties' cross-motions for partial summary judgment on the Firefighters' FLSA claims concerning regular and overtime pay for regular duties.

### B. Overtime Pay Requirements Under The FLSA

The FSLA provides that "it shall be unlawful for any person" to violate the minimum wage, overtime, and recordkeeping provisions of the Act. 29 U.S.C. § 215(a)(2) & (5); *Reich v. Stewart,* 121 F.3d 400, 404 (8th Cir.1997). The FLSA generally requires that covered employees must be paid one-and-one-half times their regular hourly rate for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); *Christian v. City of Gladstone, Mo.,* 108 F.3d 929, 931 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997); *Murray v. Stuckey's, Inc.,* 50 F.3d 564, 566 (8th Cir.), *cert. denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995); *Reich v. Delcorp, Inc.,* 3 F.3d 1181, 1182 (8th Cir.1993). However, § 7(k) of the FLSA, codified at 29 U.S.C. § 207(k), provides an exemption from this requirement, and different overtime provisions, for "any employee in fire protection activities." *See* 29 U.S.C. § 207(k); *Christian,* 108 F.3d at 931; *Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 914 (8th Cir.1991). As the Eighth Circuit Court of Appeals has explained,

> Because the nature of emergency service work does not fit the normal pattern of forty hour workweeks, Congress enacted § 207(k). This section provides a partial overtime pay exception for "any employee in fire protection activities or any employee in law enforcement activities" and permits them to work a total of 212 hours during a work period of 28 days before being entitled to overtime compensation. S.Rep. No. 93–690, at 24 (1974) U.S.Code Cong. & Admin. News 1974 at 2811; *see* S.Rep. No. 99–159, at 5 (1985) U.S.Code Cong. & Admin. News 1985 pp. 651–53. This allows the use of rotating schedules where employees work 24 hours and then have 48 hours off.

> *Christian,* 108 F.3d at 931 [2] *See also Cross,* 938 F.2d at 914–15 (also discussing § 207(k)(1)(A) & (B)).

Federal regulations set out the calculation for overtime compensation for firefighters who work a pay period of less than twenty-eight days:

> The FLSA addresses the subject of the unorthodox work-week in 29 U.S.C. § 207(k), which provides that a firefighter with a work period of at least seven days but less than 28 days shall receive overtime compensation for all hours worked in excess of a number bearing the same ratio to the total days worked as 212 hours bears to 28 days. *As 29 C.F.R. § 553.230(c) spells out, for a 27–day work period, the total number of regular hours for firefighters is 204 (because 212/28, or 7.57 hours per day, is roughly equal to 204/27, or 7.55).*

> *Alexander v. City of Evansville, Ind.,* 120 F.3d 723, 725 (7th Cir.1997) (emphasis added).

The parties here agree that, using this formula for their 27–day work period, the total number of regular hours for the Firefighters is also 204 hours. Their dispute is over whether their base salary is intended to cover only these 204 hours, as the Firefighters contend, or whether it is instead intended to cover the full 216 hours of their 27–day work period, including 12 hours of overtime,

---

**2.** As the Seventh Circuit Court of Appeals has explained, the reason Congress amended the FLSA in 1985 to create this exception from the forty-hour workweek was the Supreme Court's decision in *Garcia v. San Antonio Metro., Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which held that the Commerce Clause did not prevent Congress from imposing maximum hours and minimum wages on state and municipal employees under the FLSA. *Alexander v. City of Evansville, Ind.,* 120 F.3d 723, 725 (7th Cir.1997). "The next year, Congress [also] amended the FLSA to give governmental employers more flexibility in meeting their overtime obligations, by allowing them to pay in the form of compensatory time off. 29 U.S.C. § 207(o)." *Id.*

as the City contends. Hence, the parties dispute the Firefighters' regular rate of pay.

### C. The "Regular Rate" Of Pay

#### 1. Computing "regular rate" of pay

The Tenth Circuit Court of Appeals recently explained how the regular rate of pay is determined:

> The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed. *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432, *modified*, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944). The regular rate is a rate per hour, but employers are not required to compensate employees on an hourly basis. 29 C.F.R. § 778.109 (1993). *If an employee is employed on a salary basis, his regular hourly rate is computed by dividing the salary by the number of hours for which the salary is intended to compensate.* 29 C.F.R. § 778.113 (1993).

> \*     \*     \*     \*     \*     \*

> The regulations provide that a base salary used to calculate a regular rate can be intended to cover more than 40 hours in one week and the regulations illustrate how to deal with the calculation of the regular rate in such a case. 29 C.F.R. § 778.325 (1993). The example given in the regulations states:

> If an employee whose maximum hours standard is 40 hours was hired at a fixed of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and the statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55. *Id.*

*Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 655 (10th Cir.) (emphasis added), *cert. denied*, —— U.S. ——, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995). The court found that, in the case before it, the plaintiff firefighters and the defendant city had agreed to bi-weekly salaries intended to cover 112 hours of work for each pay period. *Id.* Therefore, the court concluded,

> [T]he regular rate consisted of the [agreed] bi-weekly salary divided by 112. The [agreed] bi-weekly salary compensated the firefighters at that rate for up to 112 hours of work. If a firefighter worked a total of 112 hours, some of those hours would be considered overtime hours, and therefore, the firefighters would also receive one-half the regular rate for each of those hours. Any hours worked over 112 were all overtime hours and the firefighters would be entitled to one and one-half times the regular rate for those hours.

*Aaron*, 54 F.3d at 655. The Tenth Circuit Court of Appeals concluded that "[t]his pay scheme is clearly consistent with the FLSA regulations." *Id.*

In so concluding, the Tenth Circuit Court of Appeals reversed the district court. The appellate court concluded that the district court had erroneously held that overtime hours cannot be used in computing the regular rate of pay. *Id.* The court explained that the Supreme Court's statement in *149 Madison Avenue Corporation* that the regular rate is the rate actually paid for the "normal, non-overtime workweek," 331 U.S. at 204, 67 S.Ct. at 1181, was not a statement of how to compute the regular rate from a salary, but an explanation that the object of the computation was "to determine what rate was being paid for the non-overtime workweek unaffected by any inflated rate paid for overtime work hours." *Aaron*, 54 F.3d at 655–56. Indeed, as the Tenth Circuit Court of Appeals noted, in *149 Madison Avenue Corporation*, the Supreme Court specifically recognized that a wage plan is not invalid, simply because the stipulated weekly wage includes both regular and overtime compensation. *Id.* at 656 (citing *149 Madison Ave. Corp.*, 331 U.S. at 204, 67 S.Ct. at 1181). Thus,

> If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours and not just the non-overtime hours because a failure to do so will result in a rate that is not representative of the rate actually paid for the "normal, non-overtime workweek." The Supreme Court has stated that if a salary includes a premium for overtime work, it

must be deducted before dividing the salary by the number of hours worked so that the resulting rate is not inflated by the overtime premium. *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 463, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948). The district court apparently confused the concepts of overtime premiums and overtime hours.

*Aaron,* 54 F.3d at 656. If the base salary of the Firefighters in this case was intended to cover the full 216 hours—and thus was intended to include both regular and overtime hours—then, like the plan in *Aaron,* the payment of a half-time premium for hours actually worked between 204 and 216 hours would be a pay scheme that "is clearly consistent with the FLSA regulations." *Aaron,* 54 F.3d at 655. *See also* 29 C.F.R. § 778.325 (1997) (payment of a half-time premium in addition to salary for overtime hours covered by the base salary complies with the FLSA).

### 2. The Firefighters' "regular rate" of pay

The conclusion that the City's compensation scheme would comply with the FSLA if the base salary is intended to cover 216 hours per pay period, however, does little more than beg the central question in this litigation: After July 25, 1995, was the base salary of the Firefighters to cover 204 hours or 216 hours in a twenty-seven day pay period? *See* 29 C.F.R. § 778.113 (1993) (if an employee is employed on a salary basis, his regular hourly rate is computed by dividing the salary by the number of hours for which the salary is intended to compensate); *Aaron,* 54 F.3d at 655. Each of the parties here has moved for partial summary judgment on the question of whether the Firefighters' regular rate of pay was based on 204 hours or 216 hours per pay period and the question subsequent of whether the Firefighters were therefore paid regular and overtime pay in compliance with the FLSA.

The City contends that the base salary is intended to cover 216 hours in a twenty-seven day pay period, with no overtime premium included. The City contends that, pursuant to its notice of July 11, 1995, it has paid an additional half-time premium (basing the regular rate on the particular firefighter's base salary divided by 216 hours) for any hours actually worked between 204 and 216 hours in each pay period. Thus, the City contends it has paid time-and-a-half for overtime in excess of 204 hours since July 25, 1995. For their part, the Firefighters contend that, for the last ten years, it has been clear that the parties intended the base salary to compensate for 204 hours per pay period and that, since the City unilaterally changed the regular and overtime pay provisions on July 11, 1995, it has continued to pay Firefighters who work only 204 hours per pay period their entire base salary.

The City points to the collective bargaining agreements, which, since 1985, have stated that the Firefighters work a fifty-six hour week. This works out to seven eight-hour days per week, which in turn comes to 216 hours for twenty-seven days. However, the Supreme Court has held that when determining the number of hours a salary is intended to cover, the contract between the parties is not necessarily determinative. *149 Madison Ave. Corp.,* 331 U.S. at 204, 67 S.Ct. at 1181; *Aaron,* 54 F.3d at 656. Instead, the regular rate is an " 'actual fact,' and in testing the validity of a wage agreement under the Act the courts are required to look beyond that which the parties have purported to do." *149 Madison Ave. Corp.,* 331 U.S. at 204, 67 S.Ct. at 1181 (citing *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945), and finding that the hourly rate actually paid was not consistent with the formula stated in the contract.). *See also Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 464, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948) (holding that the "words and practices under the contract are the determinative facts in finding the regular rate"); *Aaron,* 54 F.3d at 656 (citing *149 Madison Ave. Corp.*).

■ Looking beyond the contract, then, to the parties' actual conduct, the court finds, first, that there is no genuine issue of material fact that *prior to* July 25, 1995, the Firefighters' base salary was intended to compensate for 216 hours, as the City contends. The City states, and the Firefighters do not dispute, that from 1985 to 1995, the Firefighters were scheduled for 216 hours per pay period, but, in order to avoid overtime,

they were given twelve hours off per cycle to bring their total hours worked to the 204 hours of regular time permitted under the FLSA. *See, e.g.,* Exhibit A to the Affidavit of Glenn Goebels; Exhibit to the Affidavit of Michael Fitzgerald. The Firefighters contend, however, that these hours off meant that their base salaries were intended to cover only 204 hours per pay period.

In similar circumstances, the plaintiffs in *Aaron* asserted that certain time off was given in order to reduce overtime rather than to provide compensated time off, and therefore those hours could not be included in the divisor for calculating the plaintiffs' regular rate of pay. *See Aaron,* 54 F.3d at 656. However, in the circumstances of that case, the Tenth Circuit Court of Appeals concluded that the time off was simply "another form of paid vacation and, therefore, properly included in hours to be compensated by the regular bi-weekly salary." *Id.* In this case, the Firefighters have failed to generate any genuine issue of material fact that the pre–1995 hours off were not paid vacation includable in the total hours by which the base salary should be divided to arrive at the Firefighters' regular rate. To the contrary, in the affidavit in support of the Firefighters' own motion for partial summary judgment and in resistance to the City's motion for partial summary judgment, Michael Fitzgerald states that, under the pre–1995 regime, "If a firefighter worked over 204 hours, he was compensated with hourly overtime pay at the rate of 1.5 times the usual salary *divided by 216.*" Affidavit of Michael Fitzgerald, p. 2 (emphasis added). This concession demonstrates that the Firefighters' base salary was intended to cover the full 216 hours, and the compensation for hours over 204 included regular rate compensation in lieu of paid time off plus a half-time premium for overtime.

Because the Firefighters' FLSA claims are not based on any inadequacy in compensation prior to July 25, 1995, the court's conclusion concerning how many hours base salary was intended to cover prior to July 25, 1995, is not important for its own sake. It is, however, important for the effect it has on the Firefighters' arguments concerning compensation after July 25, 1995. First, as a matter of law, requiring the Firefighters to work all 216 hours after July 25, 1995, in order to obtain their full base salary *did not* reduce their regular hourly rate, as the Firefighters have contended, because the base salary had always been intended to cover 216 hours per pay period. What was lost was twelve hours of paid time off each pay period. This is in fact what the notice of July 11, 1995, says. According to the terms of that notice, after July 25, 1995, "The city will begin paying for the 12 hours in question versus allowing the time off. Hours worked shall be the determining factor whether payment shall be received." Exhibit B to Affidavit of Glenn Goebels. Thus far, conduct and the terms of the contract are in accord. *Compare 149 Madison Ave. Corp.,* 331 U.S. at 204, 67 S.Ct. at 1181 (finding that the hourly rate actually paid was not consistent with the formula stated in the contract and concluding that the rate paid established the regular rate).

■ Furthermore, because there is no genuine issue of material fact as to whether the base salary for the previous ten years had been intended to cover 216 hours per pay period, no reasonable inference arises from the parties' prior contracts and course of conduct that after July 25, 1995, the base salary was intended to compensate for 204 hours, as the Firefighters contend. The reasonable inference, if any, would be to the contrary: that after July 25, 1995, the base salary was *still* intended to compensate for 216 hours per pay period. This is not to say, however, that the Firefighters cannot or have not generated a genuine issue of material fact as to whether *after* July 25, 1995, their base salaries were intended to compensate only for 204 hours per pay period, or that the City has demonstrated beyond dispute that the base salary was still intended to compensate for 216 hours per pay period.

Indeed, the court holds that there is a genuine issue of material fact on precisely this issue. *See* FED.R.CIV.P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."). On the one hand, the City points to the language of the collective bargaining agreement in effect from July 1, 1995, through June 30, 1997. That agree-

ment states that "[n]ormal working schedules for the Fort Dodge Fire Department members shall be on the basis of a total of fifty-six (56) hours per week." Collective Bargaining Agreement, July 1, 1995–June 30, 1997, p. 4 (attached to Affidavit of Glenn Goebels). A fifty-six hour workweek, computed for a twenty-seven day pay period, amounts to 216 hours per pay period. The City also points to the notice of July 11, 1995, which continues to recognize 216 hours as the entitlement for base salary, because it does not change the requirement of 216 hours per pay period, although it eliminates twelve hours of paid time off per pay period in favor of compensation for hours actually worked, and states that compensation will be reduced if the required hours are not worked. *See* Exhibit B to Affidavit of Glenn Goebels (providing that "[t]he city will begin paying for the 12 hours in question versus allowing the time off. Hours worked shall be the determining factor whether payment shall be received. All hours worked between 204hrs [sic] and 216hrs [sic] will receive half time pay for the 12 hours in question. Any time off will result in a reduction in pay for the hours in question."). Thus, the City's contentions have a real basis in the record, *see Hartnagel*, 953 F.2d at 394 (an issue of material fact is genuine if it has a real basis in the record), and are material to the question of the number of hours the base salary was intended to cover, which in turn impacts or determines whether the City has properly paid regular and overtime pay for regular duties. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (a factual dispute is "material," and will therefore preclude summary judgment, if it "might affect the outcome of the suit under the governing law"); *Beyerbach*, 49 F.3d at 1326 (same); *Hartnagel*, 953 F.2d at 394 (same).

However, as noted above, the terms of the contract are not determinative. *See Bay Ridge Operating Co.*, 334 U.S. at 464, 68 S.Ct. at 1196,; *149 Madison Ave. Corp.*, 331 U.S. at 204, 67 S.Ct. at 1181; *Aaron*, 54 F.3d at 656. The Firefighters contend that, as a matter of fact, the City has paid firefighters who work only 204 hours in a pay period their entire base salary, and support that contention with record evidence. *See* Affidavit of Michael Fitzgerald, p. 2. *See also Hart-*

*nagel*, 953 F.2d at 394 (an issue of material fact is genuine if it has a real basis in the record). Plainly, this disputed fact gives rise to a reasonable inference that, at least after July 25, 1995, the base salary was intended to compensate only for 204 hours per pay period. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356 (a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts); *Quick*, 90 F.3d at 1377 (same). The dispute that thus arises, again, impacts or determines whether the City has properly paid regular and overtime pay for regular duties. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (a factual dispute is "material," and will therefore preclude summary judgment, if it "might affect the outcome of the suit under the governing law"); *Beyerbach*, 49 F.3d at 1326 (same); *Hartnagel*, 953 F.2d at 394 (same).

Proof at trial may demonstrate that, even after July 25, 1995, the parties still intended the base salary to compensate for 216 hours per pay period. In that case, firefighters paid the full base salary for 204 hours may have been technically, or perhaps inadvertently, *overpaid*, while firefighters paid a half-time premium for hours between 204 and 216 per pay period were paid in compliance with the FLSA. *See Aaron*, 54 F.3d at 655 (such a payment scheme "is clearly consistent with the FLSA regulations"). *See also* 29 C.F.R. § 778.325 (1997) (payment of a half-time premium in addition to salary for overtime hours covered by the base salary complies with the FLSA). Proof at trial may demonstrate, however, that the parties intended the base salary to cover 204 hours per pay period. In that case, all of the Firefighters' FLSA claims concerning regular and overtime pay for regular duties would stand, because firefighters paid a half-time premium that was based on a regular rate calculated by dividing the base salary by 216 hours for hours between 204 and 216—instead of a greater regular rate obtained by dividing the

base salary by 204 hours and compensating time over 204 hours at 1.5 times that greater rate—were under-compensated not only for every regular hour worked, but for every overtime hour worked.

Although appropriate proof, consisting primarily of introduction, analysis, and comparison of the actual pay records of individual firefighters, should be readily available at trial, such proof was omitted from the summary judgment record. Thus, cross-motions for partial summary judgment notwithstanding, the court cannot determine as a matter of law or as a matter of fact how many hours per pay period the base salary of the Firefighters was intended to cover after July 25, 1995. Because such a determination cannot be made, there remain genuine issues of material fact as to the Firefighters' FLSA claims at issue on cross-motions for partial summary judgment.

### III. CONCLUSION

Because genuine issues of material fact remain concerning how many hours the Firefighters' base salary was intended to cover, there are genuine issues of material fact as to whether, since July 25, 1995, the Firefighters have or have not been paid regular and overtime pay in compliance with the FLSA. Consequently, some proof, figuring, and analysis remains to be presented to a jury before any of the issues in this case can be decided.

Therefore, the parties' cross-motions for partial summary judgment are both **denied.**

**IT IS SO ORDERED.**

